# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY PRODUCTS, INC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-2871 |
| | § | |
| BMK INTERNATIONAL CORP. D/B/A PROGUARD | § | |
| INDUSTRIES AND/OR PROFESSIONAL | § | |
| TECHNOLOGY SOLUTIONS, ROGER MCDUFFY, | § | |
| RICHARD D. BEHAM, AND CHARLES R. KLUTTS, | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER

Pending before the court is ATP's motion to remand. Dkt. 2. Upon consideration of ATP's state court original petition and the law, the court finds that ATP's motion should be GRANTED.

### BACKGROUND

The facts as pleaded in ATP's state court original petition are as follows. In the years leading up to 2001, Clarence and Katherine Freeman created intellectual property regarding water absorbing filters, rust inhibiting thread compound and water absorbent packets. The Freemans obtained patents on some, but not all, of their intellectual property—the water absorbent packets, and water detection and removal for instruments. Upon the formation of ATP in 2001, the Freemans granted an exclusive license to ATP to manufacture and sell the patented products and the rest of their related intellectual property. At the same time, the Freeman's own company, Waterguard Telecommunication Technologies, Inc., went through an involuntary bankruptcy proceeding and trustee's sale. But, the bankruptcy court ultimately determined that the intellectual property at issue in this case was individual property owned by the Freemans and not a part of the bankruptcy.

ATP alleges that the defendants ("BMK") manufacture and sell counterfeit ATP products, including the water filters and thread compound.  BMK allegedly acquired the intellectual property to make the counterfeits through their co-defendants, Richard Beham and Roger McDuffie.  Beham and McDuffie previously worked either for ATP or closely with ATP and had access to ATP's trade secrets.  ATP alleges that Beham and McDuffie provided BMK with ATP's intellectual property, customer lists, and sales projections.  ATP further alleges that BMK continues to market the counterfeit ATP products to the detriment of ATP.

On June 1, 2006, ATP brought suit in the 334th Judicial District Court of Harris County, Texas against BMK for misappropriation of trade secrets, breach of fiduciary duty, and civil conspiracy.  On September 8, 2006, BMK removed the case to this court.  BMK argues that 28 U.S.C.1338(a) provides subject matter jurisdiction for the case, because the claims arise under federal patent laws.  On October 5, 2006, ATP timely moved to remand the case.  ATP argues that its claims are purely state law claims under which the patents are a fact not an issue.

### ANALYSIS

As a predicate matter, the court finds that the parties do not have diversity jurisdiction under 28 U.S.C. § 1332 because the parties are all citizens of the state of Texas.  Therefore, federal jurisdiction is based solely on the federal courts' authority over claims arising under federal patent laws as governed by 28 U.S.C. § 1338(a).[1]  That section provides that "[t]he district courts shall have

---

[1]  BMK also argued in its removal that this court has jurisdiction because ATP is seeking consideration of a prior bankruptcy proceeding regarding the patents.  Dkt. 1 at ¶ 10.  However, ATP's original petition does not ask the state court to review the bankruptcy proceeding.  Instead ATP claims that a breach of fiduciary duty on the part of the defendants occurred during the adversary proceeding and proximately caused ATP's costs of defending that lawsuit.  Should the bankruptcy court's decision become an issue, the state court is fully capable of assessing any *res judicata* and/or collateral estoppel defenses that BMK might raise.

original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a). "[T]he mere presence of a patent issue cannot of itself create a cause of action arising under the patent laws." *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed.Cir. 1987). The Supreme Court has held that section 1338(a) applies "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law in that patent law is a necessary element of the well-pleaded claims." *Christianson v. Colt*, 486 U.S. 800, 809, 108 S.Ct. 2166, 2174 (1988). Since ATP's original complaint does not contain any causes of action created by federal patent law, the question becomes whether ATP's state law claims raise a substantial question of federal patent law.

The Federal Circuit has held "that issues of inventorship, infringement, validity and enforceability present sufficiently substantial questions of federal patent law to support jurisdiction under section 1338(a)." *Bd. of Regents, Univ. of Texas Sys. v. Nippon Telephone and Telegraph Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005). ATP argues that the patents themselves are not at issue in this case. Rather, the misappropriation of the intellectual property, customer lists, and product research that comprised ATP's trade secrets, and the breach of fiduciary duty that accompanied that misappropriation are the central claims. Additionally, ATP emphasizes that many of the trade secrets at issue, including the thread compound, are not protected by patent. They claim that whether the two patents that are a part of the trade secrets are valid, infringed, or enforceable has no bearing whatsoever on ATP's state law claims. Lastly, ATP points to the Supreme Court's decision in *Bonito Boats* in support of its position that state trade secret law and patent law are separate and

distinct from each other.  *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165-66, 109 S.Ct. 971, 985 (1989) ("[S]tate trade secret law [has] coexisted harmoniously with federal patent protection for almost 200 years.").

BMK counters that federal jurisdiction is proper because ATP has pleaded artfully so as to avoid mentioning the patent infringement claim that BMK urges is the true issue in the case.  BMK points to language in the original petition that alleges the defendants conspired to "steal" ATP's patented material as indicative of ATP's actual meaning.  Steal, they aver, is merely a synonym for infringe and therefore ATP is actually stating an infringement claim.  Moreover, because ATP seeks to recover the litigation costs of defending itself in the bankruptcy action, BMK argues federal jurisdiction is warranted.  In support of its position, BMK cites the Fifth Circuit's *Scherbatskoy* decision.  In *Scherbatskoy*, the plaintiff was suing for royalties owed on a patent license agreement.  *Scherbatskoy v. Halliburton*, 125 F.3d 288, 290 (5th Cir. 1997) [hereinafter *Scherbatskoy I*].  The Fifth Circuit found that in order to decide whether Halliburton had breached the royalty contract, the court would have to determine if Scherbatskoy's patents had been infringed.  *Id.* at 291.  BMK argues that the claims in *Scherbatskoy I* are analogous to those in the instant case, and therefore would implicate  a substantial question of patent law—infringement.  The court disagrees.

*Scherbatskoy I*'s value as precedent is questionable.  The Fifth Circuit appeal in *Scherbatskoy I* was a review of the district court's denial of remand and grant of summary judgment.  Because the Fifth Circuit found that any resolution of the breach of contract claims necessarily required a determination of whether the patent had been infringed, it transferred the case to the Federal Circuit for review.  *Id.* at 292.  In *Scherbatskoy II*, the Federal Circuit upheld the Fifth Circuit's ruling, but it did so under the law of the case rather than in agreement with the Fifth Circuit's characterization

of the claim. *Scherbatskoy v. Halliburton*, 178 F.3d 1312, *3-4 (Fed. Cir. 1999) [hereinafter *Scherbatskoy II*]. Casting doubt upon the Fifth Circuit's conflation of the concepts of something "covered by" patent and something infringing upon patent, the Federal Circuit found the Fifth Circuit's determination of section 1338(a) jurisdiction merely plausible. *Id.* Therefore, the precedent, if any, set in *Scherbatskoy I* is shaky at best.

Additionally, there are other Federal Circuit cases that are more closely analogous to the present case. In *AT&T v. Integrated Network Corp.*, four former employees of AT&T Labs left AT&T employment and went to work for INC. *AT&T v. Integrated Network Corp.*, 972 F.2d 1321, 1322 (Fed. Cir. 1992). Shortly after commencing their employment with INC, the former AT&T employees filed for a patent on technology that AT&T claimed was developed in AT&T labs. *Id.* AT&T brought state law claims for breach of contract, breach of fiduciary duty, misuse and misappropriation of proprietary information, and inducing breach of contract. *Id.* INC removed the case to district court arguing that the court would have to determine when the technology was invented — a substantial issue of patent law. *Id.* at 1323. The district court agreed, but the Federal Circuit reversed. It held that AT&T's claims were all traditional contract and tort claims involving breach of contract. *Id.* The only possible issue of patent was the timing of when the ideas for the patented items were conceived, and even that was more an issue of common sense than of patent. *Id.* The patent law issue was merely one possible avenue. *Id.* at 1324.

> Under *Christianson*, every theory of a claim as pled must depend on patent law if there is to be federal jurisdiction. Because "inventions ... conceived" has both patent and general law meanings, AT&T may rely on one theory with patent connotation and on another theory involving no patent question. Therefore, any patent issue is not necessary to AT&T's claim, and is therefore not a substantial question of patent law; it is ancillary and cannot of itself sustain jurisdiction.

*Id.* Here, ATP could have brought all of its state law claims based solely upon the misappropriation

of the customer lists, market research and unpatented thread compound.  ATP clearly intended that the two patents be ancillary.  And because "the plaintiff is the master of the  complaint [ATP] may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99, 107 S.Ct. 2425, 2433 (1987).

In a later case, *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, the Federal Circuit again found that state law claims of misappropriation of trade secrets, breach of contract and breach of fiduciary duty did not create a substantial issue of patent law.  *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277, 1279-80 (Fed. Cir. 2001).  A former employee of Uroplasty upon leaving Urolplasty's employment filed for a patent on technology that Uroplasty claimed was their proprietary property.  *Id.* at 1279.  In that case, Uroplasty filed an interference against the patent and its state law claims separately.  *Id.*  The Federal Circuit held that although the patent might in fact be evidence to support Uroplasty's claims, its presence was not enough to confer jurisdiction.  *Id.* at 1280.  Most recently, the Federal Circuit found that a scientist who left the University of Texas and subsequently patented UT's allegedly proprietary material for a Japanese company, NTT, could be sued in state court for tortious interference.  *Univ. of Texas*, 414 F.3d at 1363.  NTT argued that in order for UT to show the business expectancy prong of a tortious interference claim, UT would have to prove the validity of the patents.  *Id.* at 1362.  The court disagreed.  The possibility that the validity of the patent could arise as a defense was not sufficient to create jurisdiction.  *Id.* at 1363 ("[T]he presence of a possible question of inventorship does not convert the state law action into one arising under the patent laws.").  In each of these three cases, like the case at bar, proprietary information was taken by a former employee or person in a position of confidence and given to a

subsequent employer.  The fact that a patent was issued at any point in the process did not by itself turn the claim into a federal question.

Here, ATP has brought state law claims for misappropriation of trade secrets, breach of fiduciary duty and civil conspiracy.  For the first claim, the elements of misappropriation of a trade secret are (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages.  *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex.App—Austin 2004, pet. denied).  None of these elements requires that the court make any determination as to the validity or infringement of the patents.  Even if the patents were completely invalid, the trade secret claims could still go forward. In comparing trade secrets with patents, the Fifth Circuit explains that because the policy reasons for protection of trade secrets is different from those protecting patents, the standards by which they are measured is also different.  *Cataphote Corp. v. Hudson*, 422 F.2d 1290, 1293 (5th Cir. 1970).  *See also* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40 cmt. c. (2006).  For ATP's second state law claim "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."  *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.—Dallas, 2006, no pet. h.).  The relationship between the plaintiff and defendants in no way hinges on any determination of patent law.  And for ATP's last claim, a civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Massey v. Armco Stell Co.*, 652 S.W.2d 932, 934 (Tex. 1983).  While one theory of the civil conspiracy could construe a conspiracy to "steal" ATP's patent as a conspiracy to infringe upon ATP's patents,

other theories not involving infringement could equally support the claim.  Like the Federal Circuit in *AT&T*, this court finds that because "steal" could have both patent law and general law meaning, the patent issue is not necessary to ATP's claim and therefore not a substantial question of patent law.  *AT&T*, 972 F.2d at 1324.

### CONCLUSION

Under 28 U.S.C. § 1338(a) federal courts have jurisdiction over claims arising under patent law only when federal patent law creates the claim, or the plaintiff's right to relief depends on the resolution of a substantial question of federal patent law.  *Christianson*, 486 U.S. at 808, 108 S.Ct. at 2174.  In order to find jurisdiction predicated on the necessary resolution of a substantial issue of patent law, "every theory of a claim as pled must depend on patent law."  *AT&T*, 972 F.2d at 1324. Because ATP's state law claims have been pleaded and can be supported under alternate non-patent theories, no substantial issue of patent law arises.  Therefore, the court finds that it lacks jurisdiction to hear the case and ATP's motion to remand is GRANTED.

It is so ORDERED.

Signed at Houston, Texas on November 17, 2006.

_____
Gray H. Miller
United States District Judge

8